## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **LARHONDA H.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 21-CV-498-CDL** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **affirms** the Commissioner's decision.

## I.    Standard of Review

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id*. § 423(d)(1)(A).

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, --- U.S. ---, 139 S.Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S.Ct. at 1152 (quoting 42 U.S.C. § 405(g)). The court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II.    Background and Procedural History

The plaintiff filed an application for Title XVI supplemental security income (SSI) benefits on November 25, 2019, when she was 38 years old. (R. 92). She alleged disability due to multiple mental impairments, including schizoaffective disorder, mood disorder, severe recurrent major depression with psychotic features, post-traumatic stress disorder (PTSD), depressed bipolar disorder with psychotic features, dysthymic disorder, and depressive disorder, as well as a skin condition called hidrandenitis. *Id*. In her application, plaintiff alleged a disability onset date of August 7, 2012. *Id*.

2

The Commissioner denied the plaintiff's claim initially and on reconsideration. (R. 91-118). Administrative law judge (ALJ) Laura Roberts held a telephonic hearing on March 30, 2021. (R. 17). The plaintiff and a vocational expert (VE) testified, and the plaintiff was represented by her attorney, Paul McTighe. *Id*.

On June 2, 2021, the ALJ issued a decision denying benefits. (R. 17-43). The plaintiff appealed the ALJ's decision to the Appeals Council, which denied plaintiff's request for review on September 15, 2021. (R. 1-4). As a result, the ALJ's June 2, 2021 decision became the final decision of the Commissioner. *Id*. Plaintiff then timely appealed to the district court.

## III.    The ALJ's Decision

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If

the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id*.

Here, the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since her application date of November 25, 2019. (R. 21). At step two, the ALJ found that plaintiff suffers from the severe impairments of panic disorder; depressive disorder; and schizoaffective disorder, depressive type. *Id*. The ALJ found the plaintiff's obesity and substance abuse are non-severe. *Id*. The plaintiff's left ankle sprain, PTSD, and hidradenitis were found to be non-medically determinable. *Id*.

At step three, the ALJ found the plaintiff's impairments do not meet or medically equal a Listing. In explaining this finding, the ALJ discussed the "paragraph B" criteria— four areas of mental functioning used to determine whether a claimant's mental impairments functionally equal a Listing. (R. 22-30); *see* 20 C.F.R. § 404 Subpt. P App'x 1. The ALJ found the plaintiff has a moderate limitation in understanding, remembering, and applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself. (R. 22-30). Because the plaintiff does not have at least one extreme or two or more marked limitations, the ALJ determined that the "paragraph B" criteria are not satisfied. (R. 29). The ALJ also considered the "paragraph C" criteria (for "serious and persistent mental disorders," *see* Listing 12.00A(2)(c)) and determined that they are not present. (R. 29-30).

4

At step four, the ALJ determined that the plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> [t]he [plaintiff] can understand, remember, and carry out simple tasks with simple instructions in a routine work setting (defined as SVP 1-2). She can have occasional interaction with coworkers and supervisors, but no interaction with the general public (contact is okay). No tandem or teamwork. Occasional changes in work processes. No commercial driving. No production rate pace (defined as very fast-paced assembly line work). No reading required to perform the job duties.

(R. 30).

The ALJ determined that the plaintiff has no past relevant work. (R. 37). Thus, the ALJ proceeded to step five. Based on the VE's testimony as to a hypothetical claimant with the plaintiff's age, education, work experience, and RFC, the ALJ found that plaintiff can perform the requirements of representative occupations, including:

> *Janitor*, Dictionary of Occupational Titles (DOT) # 381.687-018, unskilled, specific vocational preparation (SVP) level 2, medium exertion, with 279,000 such jobs estimated in the national economy;
>
> *Dishwasher*, DOT # 318.687-010, unskilled, SVP level 2, medium exertion, with 350,000 such jobs estimated in the national economy; and
>
> *Hand packer*, DOT # 920.587-018, unskilled, SVP level 2, medium, with approximately 204,000 such jobs estimated in the national economy.

(R. 38). The ALJ found that these occupations comprise work that exists in significant numbers and, accordingly, found plaintiff not disabled at step five. *Id*.

## IV.    Discussion

The plaintiff had just been released from prison when she filed the instant application. The plaintiff alleges that previously, she received SSI disability benefits for the period dating from August 7, 2012 until her incarceration in 2017. (*See* Doc. 11 at 1). She argues that ALJ Roberts erred by not adopting the 2013 RFC findings made by a different ALJ, David Engel.

In 2013, ALJ Engel found the plaintiff had been disabled since August 7, 2012 and awarded benefits. (R. 123-131). At that time, ALJ Engel made the following RFC determination:

> [The plaintiff] was 30 years of age on the protective filing date of her application for Supplemental Security Income (SSI) (August 7, 2012) (she is currently 31 years of age with a birth date of April 8, 1982) with an 8th grade education (1996) with no past relevant work. She is able to perform a full range of light and sedentary exertion work. She is unable to climb ropes, ladders, and scaffolds, and is unable to work in environments where she would be exposed to unprotected heights and dangerous moving machinery part[sic]. She is able to understand, remember, and carry out simple instructions in a work-related setting, and was able to interact with co-workers and supervisors, under close supervision and is unable to interact with the general public more than occasionally, regardless of whether that interaction is in person or over a telephone. She requires frequent breaks (defined by the ALJ as the need for breaks averaging 10-15 minutes per hour throughout the course of the workday) because of functional limitations caused by chronic pain and side effects of medication. all variously described. She requires close supervision (defined by the AIJ as the need for frequent to constant intervention on the part of the manager, supervisor, or foreman to ensure she remains on task and performs those tasks to industry standard). She is afflicted with symptoms from a variety of sources to include moderate intermittent pain and fatigue, and allied disorders, all variously described, that are of sufficient severity so as to be noticeable to her at all times, but nevertheless is able to remain

attentive and responsive in a work-setting and would be able to
perform work assignments within the above-cited limitations.

(R. 127). ALJ Engel noted that "[m]edical improvement is expected with appropriate

treatment," and therefore recommended that a continuing review of eligibility be

performed in 36 months. (R. 131).

It is undisputed that the disability benefits awarded to the plaintiff in 2013 were

terminated before she filed her current application. The plaintiff does not argue that her

earlier benefits were terminated improperly or that she was entitled to a resumption of

benefits pursuant to 20 C.F.R. § 416.1339(c). Thus, the plaintiff concedes that, in order to

receive any further benefits after her release, she was required to file a new application.[1]

Nor is it contested that SSI disability benefits are not payable for any month prior to the

date that a claimant files an application for benefits. *See* 20 C.F.R. § 416.335.

Nonetheless, the plaintiff argues that ALJ Roberts was bound by principles of res

judicata and collateral estoppel to adopt the same RFC determination that ALJ Engel found

in 2013. Specifically, the plaintiff contends that ALJ Roberts should have adopted ALJ

Engel's previous finding that plaintiff would require "close supervision," defined as "the

need for frequent to constant intervention on the part of the manager, supervisor, or

---

[1]    42 C.F.R. § 1339(c) provides that if disability benefits have been suspended as a
result of certain violations (such as a violation of probation conditions), the payments are
to resume once the individual is no longer violating the conditions, as long as the benefits
are otherwise payable. *See also* 42 U.S.C. § 402(x)(1)(A) (disability benefits are not
payable for any month in which an individual is confined "pursuant to his conviction of a
criminal offense"); *see* 20 C.F.R. § 416.1335 (providing that Commissioner will terminate
disability benefits after 12 consecutive months of benefit suspension for any reason).

foreman to ensure she remains on task and performs those tasks to industry standard." (R. 127).[2]

The plaintiff's attorney raised this argument during the hearing before ALJ Roberts and in a post-hearing brief (*see* R. 204-207). ALJ Roberts acknowledged that he had "requested the undersigned adopt the prior [RFC] assessment from the prior decision by ALJ Engel." (R. 17). However, the ALJ concluded there was no legal requirement to do so, noting that "Oklahoma is not in a jurisdiction governed by Acquiescence Rulings 98-3(6) or 98-4(6)." *Id*.[3] Moreover, ALJ Roberts noted that the record before her did not indicate any severe physical impairments, and the plaintiff had testified that she was unable to work only because of her mental impairments. (R. 17-18). Thus, she denied the request to adopt ALJ Engel's earlier RFC findings.

Case law in the Tenth Circuit supports ALJ Roberts' conclusion that she was not bound to adopt an RFC from an earlier time period. In *Gonzales v. Colvin*, the claimant argued that an ALJ in 2008 was required to adopt a different ALJ's 2001 findings regarding the claimant's RFC. 515 F. App'x 716, 721 (10th Cir. 2013) (unpublished).[4] Because the claimant had reached a different age category, this approach would have resulted in a

---

[2]   During the 2021 hearing before ALJ Roberts, the VE testified that a "close supervision" requirement would preclude any competitive employment. (R. 84).

[3]   Those rulings were issued in response to the Sixth Circuit's decisions in *Dennard v. Sec'y of Health & Human Servs.*, 907 F.2d 598, 600 (6th Cir. 1990) and *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997)—two cases discussed *infra*—and explain how the Commissioner will apply those rulings in the subject states.

[4]   Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value."

finding of disability under the Grid Rules. However, the Tenth Circuit rejected this argument, explaining that "an ALJ's evaluation of the claimant's second application for benefits was an independent consideration of her eligibility at the time of her second application." *Id*. (quoting *Rucker v. Chater*, 92 F.3d 492, 495 (7th Cir. 1996)).

The *Gonzales* court further acknowledged that it is not necessarily inconsistent for a second ALJ to adopt an RFC that is less restrictive than a prior RFC determination, because "the first ALJ's findings were binding only on the time period of the claimant's eligibility during her first application and had no effect on the second application for a later time period." *Id*. *See also* 20 C.F.R. § 416.1457(c)(1) (emphasis added) (in social security cases, res judicata applies when there has been a "previous determination or decision ... about [the claimant's] rights *on the same facts and on the same issue or issues*, and this previous determination has become final by either administrative or judicial action").

Although the *Gonzales* court declined to "decide whether in other circumstances the findings from a prior decision are binding on a subsequent ALJ," the same reasoning applies here. The plaintiff's 2019 application involved a different, unadjudicated time period, for which new evidence was available. *See also Wilson v. Chater*, 113 F.3d 1248, 1997 WL 218486, at *2 (10th Cir. 1997) (unpublished) (quoting *Rucker*, 92 F.3d at 495) ("Recurring applications for disability benefits generally deal with different periods of time. Because medical conditions and impairments can change, findings as to a claimant's residual functional capacity during one period '[are] not conclusive evidence of [his] residual functional capacity at a later date.' Passage of time may destroy the identity of issues essential to the operation of collateral estoppel.").

Plaintiff's other cited cases do not conflict with this conclusion. In *Poppa v. Astrue*, the claimant argued that an ALJ reviewing her claim on remand from the Appeals Council violated the law of the case doctrine by adopting a different RFC than the previous ALJ. 569 F.3d 1167, 1170 (10th Cir. 2009), the court rejected this argument, explaining that res judicata did not apply, because the first ALJ's decision had not become final. The court did not address whether the second ALJ's decision involved the same facts and issues as the first ALJ's decision. In *Gavin v. Heckler*, the Eighth Circuit held that an ALJ could not properly reevaluate evidence to support a finding of nondisability, where a previous ALJ had found the claimant disabled based on the very same evidence. Unlike here, the evidence at issue in *Gavin* pre-dated the first ALJ's hearing. 811 F.2d 1195 (8th Cir. 1987).

In *Drummond*, the Sixth Circuit "reject[ed] the Commissioner's contention that the [Commissioner] has unfettered discretion to reexamine issues previously determined absent new and additional evidence." 126 F.3d at 842. It held that, "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id*. In that case, the second ALJ was bound by the first ALJ's finding that the plaintiff was limited to sedentary work, where the record indicated, "rather than an improvement in [the claimant's] condition, [that] her condition actually worsened" between the first and second ALJ hearings. *Id*. at 843. *See also Lively v. Sec'y of Health & Human Servs.*, 820 F.2d 1391 (4th Cir. 1987) (citing *Gavin*, 811 F.2d at 1200) (reversing where, "[s]ome two weeks after appellant was found limited to light work [although found not disabled], he became 55 years of age. It is utterly inconceivable that his condition had so improved in two weeks as to enable him to perform medium work."); *Dennard*, 907

10

F.2d at 600 (holding that res judicata precluded Commissioner from reconsidering the exertional level of claimant's previous job as a resident care aide, where Commissioner had previously found that the job was heavy in exertion as performed and found that claimant was precluded from performing past relevant work).

None of these cases held that an ALJ reviewing new evidence, covering a different time period, from a claimant whose previous benefits were terminated, is bound by the RFC findings of a previous ALJ. And later, the Sixth Circuit clarified in *Earley v. Comm'r of Soc. Sec.* that, notwithstanding the holding in *Drummond*, an ALJ should "giv[e] a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." 893 F.3d 929, 930 (6th Cir. 2018); *see also id*. at 932 (noting that an individual who has filed a second application, "for a new period of time[, . . . may] obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold."); *see also Gonzales*, 515 F. App'x at 720-21 (citing *Rucker*, 92 F.3d at 495) (distinguishing *Lively* and *Drummond* where claimant's second application involved a "different, unadjudicated time period involving over five years of new evidence.").

Here, the Commissioner contends that the record before ALJ Roberts showed the plaintiff's condition had improved. For example, as ALJ Engel noted in 2013, a consultative psychological examination report by Susan Linde, Ph.D. reflected the plaintiff's "inability to get along with others and poor anger management. Her history suggests wild mood swings that may be indicative of Bipolar Disorder. In particular

11

revelations of flight of ideas, attempting to steal a child, days of wakefulness are examples of what was reported. However, it is difficult to ascertain whether the [plaintiff's] drug use was leading to these periods of highly impulsive behavior. It confounds the diagnosis in her instance." (R. 128). But in September 2020, after her release from prison, the plaintiff denied drug use (R. 34), and in 2021, the plaintiff testified that her medications helped with her mental symptoms. (R. 28).

After her release from prison, the plaintiff was treated at Family and Children's Services, where she was diagnosed with schizoaffective disorder (unspecified type). (R. 33). The plaintiff stated that she had started selling drugs because she needed money, until she was arrested on this charge in 2017. *Id*. She stated that she last used marijuana in 2016. *Id*.

In June 2020, the plaintiff received a treatment plan, with goals to "stabilize on medications for 6 months; [] increase ability to maintain basic needs 4 days a week and [] use coping skills to manage symptoms 3 days a week," after which she was to be discharged and referred to a primary care provider. (R. 390). Her goals included "improv[ing] symptoms of schizoaffective disorder through mental health treatment," which would help her "reach maximum community interaction and involvement through employment, independent living, volunteering or training." (R. 391). She reported that she lived with her mother and felt safe, and that she was still hopeful and wanted to resume her medication. (R. 400).

In September 2020, the plaintiff reported that she was compliant with her medications and did not have negative side effects, although she had difficulty sleeping

12

and endorsed visual hallucinations of "seeing people walk by who are not there." (R. 34). Her medications were adjusted. *Id*. In January 2021, the plaintiff had stopped taking her medications and reported depression, isolation, and low energy. (*Id*.; R. 427).

Additionally, the plaintiff testified in 2021 that she was able to start a load of laundry, prepare simple meals with her daughter's help, grocery shop with her mother, and pay bills, and that she enjoyed coloring, writing, journaling her thoughts, and playing board games with her children. (R. 32).

ALJ Roberts provided a detailed summary of the evidence she weighed in making her RFC findings. (*See* R. 21-37). She found that plaintiff can understand, remember, and carry out simple tasks with simple instructions in a routine work setting, due to moderate limitations understanding, remembering, or applying information. The ALJ noted that examinations found the plaintiff with intact memory, average fund of knowledge, and thought processes that were organized, goal-directed, logical, and linear. (R. 35). She found that the evidence shows the plaintiff can have occasional interaction with coworkers and supervisors, but no interaction with the general public and no tandem or teamwork, noting that the plaintiff sometimes showed abnormal moods and affects, although at other times, she exhibited cooperative behavior and normal speech and eye contact. *Id*. The RFC further excludes work at a production rate pace, although the ALJ noted evidence that the plaintiff was alert and oriented, and that she had normal concentration and intact abstract reasoning. *Id*.

The ALJ's decision shows that she properly accorded "a fresh look" to the plaintiff's 2019 application and the evidence of record. 893 F.3d 929. The decision also reflects that

the ALJ was "mindful of" ALJ Engel's 2013 decision, while also considering the more recent evidence in connection with the new alleged period of disability. (*Id.*; *see* R. 17-18). Finally, as set forth above, substantial evidence supports the ALJ's RFC determination. Accordingly, the ALJ's decision not to adopt the same RFC determined by ALJ Engel in 2013 is not reversible error.

For the same reasons, the Court rejects the plaintiff's related argument, that the ALJ erred in rejecting the VE's testimony that an individual who requires "close supervision" is unable to perform substantial gainful activity. The ALJ is not bound to rely on a VE's testimony in response to a hypothetical that includes limitations the ALJ did not adopt in the RFC. *Talley v. Sullivan*, 908 F.3d 585, 588 (10th Cir. 1990).

Finally, the plaintiff argues in her reply brief that the ALJ erred in failing to order a post-hearing consultative examination for her mental impairments.[5] "The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). The administrative hearing is

---

[5]    The plaintiff failed to address this issue in her opening brief, and therefore may be deemed to have waived it. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (stating that issues inadequately presented in the opening brief are waived). Nonetheless, the Court notes that plaintiff's attorney raised her request for a post-hearing examination with the ALJ. The ALJ denied the request, explaining that she found the existing record was sufficient to evaluate the plaintiff's claim, and did not find a conflict, inconsistency or ambiguity in the evidence that would warrant a consultative examination. (R. 18). The plaintiff also unsuccessfully raised this issue in her request for Appeals Council review. (R. 211).

nonadversarial, but the ALJ is responsible for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993).   As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996). "The duty to develop the record is limited to 'fully and fairly develop[ing] the record as to material issues.'" *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997) (quoting *Baca v. Dep't of Health & Hum. Servs.*, 5 F.3d 476, 479–80 (10th Cir. 1993)).

"The Secretary has broad latitude in ordering consultative examinations." *Hawkins*, 113 F.3d at 1166 (quoting *Diaz v. Sec'y of Health & Hum. Servs.*, 898 F.2d 774, 778 (10th Cir. 1990)). In *Hawkins*, the Tenth Circuit identified instances when a consultative examination is often required, such as "where there is a direct conflict in the medical evidence requiring resolution," "where the medical evidence in the record is inconclusive," and "where additional tests are required to explain a diagnosis already contained in the record." *Id*. at 1166; *see also* 20 C.F.R. § 404.1519a(b). Here, as the ALJ explained in her decision, the plaintiff has not shown any of these conditions are present. The ALJ's conclusion is supported by the opinions of state agency consulting reviewers Mary Rolison, Ph.D. and Ryan Jones, Ph.D., who found that plaintiff can perform simple tasks with routine supervision, interact appropriately with coworkers and supervisors for incidental work purposes, and adapt to a routine work setting but should avoid all contact with the

public. (R. 36). The plaintiff has not shown that the ALJ reversibly erred in declining to order a post-hearing examination.

## V.    Conclusion

The Court finds that the ALJ's decision is supported by substantial evidence and free of reversible legal error. The decision of the Commissioner finding the plaintiff not disabled is therefore **affirmed**.

DATED this 9th day of March, 2023.

Christine D. Little
United States Magistrate Judge